## PUBLISHERS FINANCE CO. v. LOVELACE.

No. 28749.    May 23, 1939.

Rehearing Denied June 13, 1939.

A. C. Markley, for plaintiff in error.

H. H. Cook, for defendant in error.

DANNER, J. The plaintiff in error brought suit against S. A. Lovelace, the defendant in error, and the board of county commissioners of Atoka county to recover on a certain written contract order for books, executed by the defendant in error, as county superintendent of Atoka county, to the United Educators, Inc., which contract, it is alleged, was in due course and for value assigned to the plaintiff.

On the trial, at the conclusion of the presentation of plaintiff's evidence, the court sustained the demurrer of Atoka county to the evidence in so far as the county is concerned for the reason that no appropriation had been made for the payment of books. The plaintiff does not appeal from the judgment sustaining the county's demurrer.

In his answer the defendant Lovelace denied generally the allegations in the petition and affirmatively alleged as follows:

"Defendant admits that as county superintendent of Atoka county, Oklahoma, he signed what purported to be an order for 10 sets of American Educators, but avers that the copy of same referred to in plaintiff's petition is not the order represented to him as the order he was signing. That if he signed said order, his signature was procured by fraud in this, to wit: that said A. R. Marbury, referred to in the exhibit to plaintiff's petition herein, represented that said order was for books to be sent on consignment; that defendant was to be under no obligation to keep same; that defendant trusted the said Marbury and had a right to rely on said statements and did rely on them, and so trusting and believing the statements so made by the said Marbury signed some kind of an order and possibly letter without reading same; that later some sets of American Educators were left at the office of the county superintendent of Atoka county, Oklahoma, in the absence of the defendant, and defendant thereafter returned same to the American Education, of all of which the plaintiff had due notice."

For reversal the plaintiff contends that the judgment is not sustained by the evidence and is contrary to the law; that the court erred in overruling its demurrer to defendant's evidence and denying plaintiff's request for an instructed verdict against the defendant S. A. Lovelace. Also, that the court erred in certain of its instructions and in refusing to give certain instructions requested by the plaintiff. We have examined the record and conclude that no material error was committed in the trial of the cause.

In support of allegations of fraud in his answer the defendant Lovelace testified in part as follows:

"Q. What was said that morning prior to the signing of those instruments you seemed to have signed? A. He asked me to buy a set of each one of those books and I didn't know whether I had the money and told him so and he said that was all right that he would ship them on consignment and said, 'If you don't want them I will pick them up.' Q. Did he tell you what was in that order? A. No, sir. Q. Did he say that the order provided that you could get them on consignment? A. Yes, sir. Q. Did he say that was in the order? State what was in the order. A. He said they would be shipped on consignment and that it was in the order that way and I wouldn't have signed it if I had not thought it was in there that way. Q. Did you sign that letter on that same statement made to you? A. Yes, sir. Q. Did you later receive these American Educators? A. They were brought to my office when I was out. Q. Did you examine them? A. Yes, sir. I opened one set. Q. Did you find it satisfactory. A. It was not what I thought it would be, no, sir. Q. Did you find it to be what he represented it to be? What did you find about those books? A. I understood there was to be 16 volumes and there was only ten volumes. There was a difference in the volumes. Q. Did you turn the books down as unsatisfactory? What did you do? A. I shipped them back. Q. Why? A. Because they were not satisfactory and I didn't have the funds to pay for them. Q. Did you do what you told this fellow Marbury you would do? A. Yes, sir. Q. You said you shipped them back. When did you ship them back? A. I don't remember the exact date. I think I have a record of that. Q. You didn't ship them back before the note was due in December, 1936? A. I don't know about that. He was supposed to pick them up before that."

The testimony of the defendant Lovelace is not seriously denied by evidence presented by the plaintiff. A. R. Marbury, the representative of the United Educators, Inc., in the procurement of the order for the books, was not used as a witness by either party to the lawsuit.

Under the conditions of the record we believe the case is governed by the rule of law announced by this court in Miller v. Troy Laundry Machinery Co., Inc., 178 Okla. 313, 62 P.2d 975. In that case, in the syllabus, we held:

"An exception to the parol evidence rule

exists for the purpose of proving fraud in inducing execution of a written contract. * * *

"One who is fraudulently induced to execute a written contract by the oral misrepresentations of the opposite party may show that fact in evidence in an action or defense of fraud, even though the written contract contains a recital that all agreements between the parties are contained therein and that there are no verbal agreements at variance therewith. * * *

"A transaction into which one is induced to enter by reliance upon untrue and material representations as to the subject-matter, made by an agent intrusted with its preliminary or final negotiations, is subject to rescission at the election of the person deceived."

In the body of the opinion in the foregoing case, the question of fraud and deceit is exhaustively discussed and need not here be quoted.

The presumption that plaintiff is a holder in due course is unavailing under the showing that the title of United Educators, Inc., to the obligation was defective under the statute because the obligation was obtained through fraud of payee's agent. In this condition the burden was then on the plaintiff to establish ownership of the note, without notice, of defective title. Sharp v. Gossett, 183 Okla. 539, 83 P.2d 599. This the plaintiff failed to do.

Furthermore, it appears from the record that the relationship between the plaintiff and the United Educators, Inc., was such as to negative the contention of ownership free from notice of infirmities in the title. Among other circumstances supporting this conclusion, is plaintiff's proof of a working relationship between the payee and the holder under which both used the same bookkeeper and otherwise conducted their business dealings in a manner calculated to acquaint each of the business dealings of the other.

The cause was tried to a jury under instructions fairly stating the law. Under the record presented, we are unable to say that the verdict of the jury and the judgment rendered thereon are contrary to the law or the evidence. Accordingly, the judgment is affirmed.

BAYLESS, C. J., and CORN, HURST, and DAVISON, JJ., concur.